a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARCUS MICKLE #23950-171,<br>Plaintiff | CIVIL DOCKET NO. 1:22-CV-02498<br>SEC P |
| VERSUS | JUDGE DRELL |
| WARDEN O'CONNELL, ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Complaint (ECF No. 4, 6) filed by pro se Plaintiff Marcus Mickle ("Mickle") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]  Mickle is incarcerated at the Federal Correctional Institution in Petersburg, Virginia.  Mickle names as Defendants Warden O'Connell, Case Manager Nash, Unit Manager Lair, and Case Manager Brown.

Because Mickle fails to state a viable constitutional claim, his Complaint and Amended Complaint (ECF Nos. 4, 6) should be DENIED and DISMISSED WITH PREJUDICE.

---

[1] The Clerk provided Mickle with a Complaint form for filing suit under 42 U.S.C. § 1983. Since Mickle sues federal agents for damages, however, his claim arises under *Bivens* rather than § 1983.

1

I.    Background

Mickle alleges that he was incarcerated at the United States Penitentiary in Pollock, Louisiana from 2019-2021. Case Manager Brown ("Brown") informed him that he was going to be transferred to a Federal Correctional Institution, and asked him to identify two places to which he may want to be moved. ECF No. 4 at 4. In April 2021, Mickle was designated for transfer to Bennettsville, South Carolina. *Id.*; ECF No. 6 at 3.

According to Mickle, other inmates with pending transfers were moved to the "quarantine block," but he was not. Mickle asserts that his removal from general population was required by Bureau of Prisons ("BOP") policy. *Id.* at 5; ECF No. 6 at 2. Mickle states that he repeatedly asked to be moved out of general population like the other inmates, but Brown and Unit Manager Lair ("Lair") replied that Mickle would "be fine" in general population. ECF No. 4 at 5. Mickle claims that he was discriminated against because he has known gang affiliations. ECF No. 6 at 4.

On July 8, 2021, Mickle was attacked by two rival gang members, resulting in stab wounds and a partially collapsed lung. ECF No. 4 at 6; 4-1 at 1. Mickle initially alleged that Defendants neglected their duties and acted with deliberate indifference by ignoring his repeated requests to be removed from general population. ECF No. 4 at 6. In an Amended Complaint, Mickle states that he "mistakenly labeled" his claim as one of deliberate indifference. He sought to amend to claim that he was denied equal protection of the laws. ECF No. 6 at 1.

Mickle received a disciplinary charge, which was dismissed. ECF No. 4 at 7. Nonetheless, he was given a management variable and transferred to another

2

penitentiary instead of the medium security institution to which he was originally designated.

Finally, Mickle alleges that Warden O'Connell attempted "to wash the incident under the rug by disposing of the [administrative grievances] plaintiff wrote and filed." ECF No. 4 at 7.

## II. Law and Analysis

### A. Mickle's Complaint is subject to preliminary screening.

As a prisoner seeking redress from an officer or employee of a governmental entity, Mickle's Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Section 1915A(b) provides for sua sponte dismissal of a complaint, or any portion thereof, if a court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief

3

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### B. Mickel fails to state a viable claim against Defendants in their individual capacities.

Although § 1983 entitles an injured person to money damages if a state official violates his or her constitutional rights, Congress did not create an analogous statute for federal officials. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). An implied damages remedy against federal officials in their individual capacities for the violation of an individual's constitutional rights was first recognized in *Bivens*. The United States Supreme Court held that it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures:

> The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." *Id.*, at 396, 91 S.Ct. 1999. The Court noted, however, that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. *Id.*, at 396–397, 91 S.Ct. 1999. The Court, accordingly, held that it could authorize a remedy under general principles of federal jurisdiction. *See id.*, at 392, 91 S.Ct. 1999 (citing *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

*Abbasi*, 1137 S.Ct. at 1854.

Thereafter, the Supreme Court has extended *Bivens* in only two more cases: *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (recognizing a cause of action under the Due Process Clause of the Fifth Amendment for a female employee who was terminated based on her gender) and *Carlson v. Green*, 446 U.S. 14, 16–18 (1980) (recognizing a cause of action under the Eighth Amendment for a deceased prisoner

who was deprived medical attention by prison officers who knew of his serious medical condition). *See Abbasi,* 137 S. Ct. at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

In recent decades, however, the Supreme Court has "consistently refused to extend *Bivens* to any new context." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *accord Abbasi*, 137 S. Ct. at 1857 (noting that the Court has refused to recognize new *Bivens* actions "for the past 30 years" and listing a series of cases involving such refusals).

> As the United States Court of Appeals for the Fifth Circuit recently noted:
>
> In *Abbasi*, the Court stated that "[w]hen a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis. The question is who should decide whether to provide for a damages remedy, Congress or the courts?" 137 S. Ct. at 1857 (internal quotation marks and citation omitted). "The answer," the Court concluded, "most often will be Congress." *Id*. This is because "[i]n most instances . . . the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id*. (cleaned up). As a result, "the Court has urged caution before extending *Bivens* remedies into any new context." *Id*. (internal quotation marks and citation omitted). Indeed, "expanding the *Bivens* remedy is now considered a disfavored judicial activity." *Id*. (internal quotation marks and citation omitted).

*Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021).

The Supreme Court has developed a two-part test to determine if a *Bivens* claim may proceed. *Stone v. Wilson*, 2021 WL 2936055, at *5 (N.D. Tex. 2021) (citing *Abbasi*, 137 S. Ct. at 1843). Because *Bivens* is a judicially crafted remedy, courts should consider: (1) whether the case "presents a new context"; and (2) whether "there

5

are any special factors that counsel hesitation about granting the extension." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (finding "the *Bivens* question is antecedent" to other issues in a case, including qualified immunity) (internal quotations and citations omitted). The Supreme Court has also strongly counseled against extending *Bivens* to new contexts. *See Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020); *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an '*ancient regime*' that freely implied rights of action" and that "ended long ago.") (emphasis in original), *cert. denied*, 2021 WL 2044553, at *1 (2021); *Stone v. Wilson*, 2021 WL 2936055, at *5 (N.D. Tex. 2021).

In short, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020)). In practice, "[v]irtually everything else" – any case falling outside the specifics of these three cases – "is a 'new context.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865); *see also Byrd*, 990 F.3d at 883 (Willett, J., specially concurring) ("'Virtually everything' beyond the specific facts of the *Bivens* trilogy 'is a "new context"' . . . . And new context = no *Bivens* claim." (footnote omitted)).

Mickle's allegations present a "new context" even though the claims arise under the Eighth Amendment—which was at issue in *Bivens*—and under the Fifth Amendment—which was at issue in *Davis*. *See, e.g., Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the

6

entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action."); *Canada*, 950 F.3d at 307 (affirming that *Davis* does not bring the panoply of Fifth Amendment rights into play under *Bivens*); *Awan v. Harmon*, 2021 WL 2690088, at *9-10 (recognizing that an Eighth Amendment claim for failure to protect an inmate arose in a new context for purposes of *Bivens*); *Dudley v. United States*, 4:19-cv-317, 2020 WL 5322338 (N.D. Tex. 2020) (Eighth Amendment failure to protect claim arose in a new context for purposes of *Bivens*); *Velazquez v. Unknown Parties*, 2:21-CV-00268, 2022 WL 2230466, at *5 (S.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 2222974 (S.D. Tex. 2022) (same).

Because Mickle presents a "new context," the Court must "contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881. There are.

First, Congress has designed an alternative remedial structure under the Federal Tort Claims Act ("FTCA"). In addition, the BOP's Administrative Remedy Program provides an alternative process foreclosing a damages remedy under *Bivens*. *See Sheldon v. Underwood*, 3:19-CV-2041, 2022 WL 1651463, at *6 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 1644443 (N.D. Tex. 2022); *Dudley*, 2020 WL 532338, at *8; *Begay v. Leap*, 3:17-CV-2639, 2019 WL 1318410, at *3 (N.D. Tex. 2019), *report and recommendation adopted*, 2019 WL 1315901 (N.D. Tex. 2019) (citations omitted); *Brunson v. Nichols*, 1:14-CV-2467, 2018 WL 7286410, at *3 (W.D. La. 2018) (citing cases). Even if the FTCA or grievance process does not provide the exact relief sought, the Supreme Court has been clear that the alternative relief

7

necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. *Oliva*, 973 F.3d at 444.

Additionally, the "administration of the federal prison system" is a special factor counseling hesitation against such expansion. *Nabaya v. Bureau of Prisons*, 3:19-cv-215, 2020 WL 7029909, at *5 (N.D. Tex. Oct. 7, 2020), *report and recommendation adopted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020); *see also Sheldon*, 2022 WL 1651463, at *6; *Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration.") (citing *Abbasi*, 137 S. Ct. at 1857-58).

Because special factors preclude the extension of *Bivens* to Mickle's claims, his claim should be dismissed.

### C. Mickle fails to state a viable claim under the Eighth or Fifth Amendment.

Even if *Bivens* did extend to Mickle's Complaint, he fails to state a claim for which relief can be granted against Defendants in their official or individual capacities.

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). *Bivens* only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against a federal agency or the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir.

1999); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Any *Bivens* claims against Defendants in their official capacities is meritless.

Mickle cannot state a claim against Defendants in their individual capacities, either. Although prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates, they are not expected to prevent all inmate-on-inmate violence. *See Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *See id.*

A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Id.* at 837. "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). "It requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim." *Vicks v. Packnett*, 18-CV-556, 2020 WL 5083888, at *3 (M.D. La. 2020), *report and recommendation adopted*, 2020 WL 5084033 (M.D. La. 2020) (citing *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. 2019); *Van Williams v. Samaniego*, 05-CV-491, 2007 WL 9701460, at *3 (W.D. Tex. 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more

9

specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.")). Mickle does not allege that he informed Defendants of a specific threat or risk to his safety, or that they were otherwise aware of any specific threat.

Mickle also claims that Defendants failed to follow BOP policy regarding moving inmates from general population to quarantine prior to transfer. However, a failure to follow BOP policies and procedures as set forth in various program statements does not, in and of itself, state a constitutional violation. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Dockery v. U.S. Dep't of Justice*, No 09-CV-225, 2011 WL 863615, at *2 (S.D. Tex. 2011); *Gutierrez v. Maye*, 09-CV-225, 2009 WL 3584646, at *3 (W.D. Tex. 2009).

Additionally, Mickle fails to state an equal protection claim. "[T]he Due Process Clause of the Fifth Amendment applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment," which prohibits states from denying any person within their jurisdiction the equal protection of the laws, and essentially requires that all similarly situated persons be treated alike. *Rodriguez-Silva v. I.N.S.*, 242 F.3d 243, 247 (5th Cir. 2001); *see Plyler v. Doe*, 457 U.S. 202, 216, (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001). To state a viable claim, a plaintiff must allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "[A]n equal protection claim can in some circumstances be sustained

even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, Mickle does not allege that he is a member of a protected class. Instead, he alleges that he was treated differently from other transferees. However, Mickle acknowledges that he was denied "transfer housing offered to other out-of-custody inmates . . . due to Plaintiff being written an infraction." ECF No. 4 at 7. Thus, Mickle was not similarly situated to the other transferees—he was charged with a disciplinary infraction, although it was subsequently dismissed. Additionally, because inmates are transferred for a variety of reasons, Mickle cannot show that he was similarly situated to all other transferees.

Thus, even if Mickle's claim could proceed under *Bivens*, his claims are still meritless.

### III. Conclusion

Because Mickle fails to state a viable constitutional claim under *Bivens*, his Complaint and Amended Complaint (ECF Nos. 4, 6) should be DENIED and DISMISSED WITH PREJUDICE under §1915A.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and

Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Monday, February 27, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE